THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARVIN REED, Defendant-Appellant.

Second District   No. 81—448

Opinion filed September 3, 1982.

Van R. Richards, Jr., of Geister, Schnell, Richards and Brown, of Elgin, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

The defendant, Marvin Reed, was found guilty of felony theft (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(d)(1)) and conspiracy (Ill. Rev. Stat. 1979, ch. 38, par. 8—2) after a jury trial in Kane County. He was sentenced on the theft conviction to 24 months' probation and ordered to pay a fine in the amount of $8,500 plus costs.

Defendant was initially charged by an 11-count indictment filed in Kane County on June 24, 1980. Prior to trial the circuit court dismissed three of the conspiracy counts. Subsequently, this court re-

versed the order dismissing those counts. (*People v. Rodgers* (1981), 98 Ill. App. 3d 999, 424 N.E.2d 1312, *appeal allowed* (1981), 85 Ill. 2d 580.) The State ultimately chose to proceed only with three counts of the indictment. Defendant was found not guilty of theft of a motor vehicle.

On appeal defendant contends that certain exhibits, as well as certain statements of the State's key witness, were inadmissible hearsay. The fact that these were admitted into evidence, he contends, was reversible error. Additionally, defendant argues that the trial court erred when it denied his motion to discharge the petit jury panel and that the prosecutor made prejudicial statements in the closing arguments.

The key witness for the State was Sandra Mister, who testified under a grant of immunity. At the time of the trial she had criminal charges pending against her in Cook County. She testified that she had worked for a man named Donald Lawson. Her task was to meet with prospective buyers and collect money from them at the time the cars were delivered. She indicated that she had sold 15 cars for Lawson. She met the defendant in August of 1978 for the purpose of delivering a stolen car to him. She and defendant went into a bar and defendant signed a title application form with the name Cynthia Nelson, explaining that this was the name of a close friend of his wife. She indicated that defendant paid $3,500 or $4,000 and she gave defendant back $200 as a commission for the sale. Over objection, she testified that she was making the sale for Lawson and that Lawson had requested that the $200 be given to defendant. She testified that Donald Lawson was murdered on July 21, 1979.

Mister testified that at a second meeting with defendant she discussed the sale of another vehicle. This vehicle was to be sold to an individual named William Gilmore or Gilmore Williams. Later, Mister learned that the buyer of the vehicle was named Lowell Gilmore. She delivered the vehicle to Gilmore, who paid $6,000 or $6,500 for it, and she gave a $200 commission to defendant. The defendant objected to this testimony. She also indicated that she had a third meeting with defendant which concerned a problem he was having with the license plates on the first car that was purchased.

A number of other witnesses testified, both for the State and the defense. The State called numerous police officers from Aurora and Chicago to testify as to various stolen vehicles, altered titles, altered or removed V.I.N. numbers and the results of a search of the residence of Donald Lawson. Prior to the Lawson murder, Investigator Cardinale had searched the Lawson residence and removed various

car titles and documents from the residence. He testified that he had seen Lawson driving a blue Lincoln, a vehicle which he searched after Lawson was murdered. The results of his search of that auto included a phone and address book that he found in the glove compartment. This address book was admitted into evidence over the defendant's objections. The address book included the defendant's name, Marvin, followed by his phone number 898-8973. It also contained the name of Lowell Gilmore and a phone number. Gilmore was the named co-conspirator in this cause.

There was testimony from a Bloomington policeman about a stolen 1977 Lincoln which matched the identification numbers of a stolen vehicle and which also matched the description of the vehicle that witness Sandra Mister testified she delivered to defendant and Lowell Gilmore.

A secretary for the Cook County State's Attorney's office testified concerning a photostat of subpoenaed telephone records of Donald Lawson. These records were admitted as evidence. Over objection there was testimony concerning statements defendant had made before the grand jury. Defendant admitted to having purchased a Lincoln Mark V at a private sale and having paid cash for it. He indicated his wife had since sold the car.

The keeper of records at Illinois Bell offered a billing record dated August 28, 1978, as evidence. These telephone records indicated that three calls were made from the Lawson number to defendant. The records were admitted as evidence. A representative of the Secretary of State's office testified as to the titles and registration history of the vehicle in issue as well as two other stolen vehicles.

Defendant had five people testify as character witnesses. Gerry Gilmore, a named co-conspirator against whom charges had been dropped, testified that neither he nor his brother, Lowell Gilmore, knew either Donald Lawson or defendant, Marvin Reed.

The defendant took the stand and testified that he had only met Sandra Mister on one occasion but that she was a co-worker of his wife. He stated that they had struck up a conversation at the bar and that Mister had made reference to dealing with repossessed cars. She attempted to interest him in buying a Mercedes but defendant indicated he wasn't interested. Defendant denied being present when a car was delivered to Lowell Gilmore.

Defendant's first contention on appeal is that the trial court erred in allowing certain exhibits into evidence. The first was a hand written address and telephone book found in a car that had been driven by Donald Lawson, a named unindicted co-conspirator. The address

book was recovered by the Chicago police from the Lawson vehicle after his demise. As indicated, the book contained defendant's name and phone number as well as that of Lowell Gilmore.

Defendant urges that because there was no testimony as to the ownership of the book, who had written in it, who had put defendant's name in it or how it had gotten into the Lawson vehicle, it was a hearsay document that lacked authentication. Therefore, he contends it was error for the court to allow it in as evidence. The parties both agree that the book was used to corroborate Mister's testimony. The defendant urges that this was improper in that it placed the burden of explaining the book on the defense.

The other complained of exhibits are a telephone bill for Lawson's number and a service and equipment record showing a record of calls for defendant's telephone number. As indicated, it showed three calls from Lawson's number to defendant's number. All three calls were made about the time of the sale of the vehicles that Mister testified about. The defense contends that because there was no showing of who placed the calls, who answered them, or what was said, the documents were hearsay evidence and their admission constituted reversible error.

Focusing first on the address book found in the Lawson vehicle, the State contends that the book was not hearsay because it was not admitted to prove the truth of the matter asserted therein, namely that the defendant's phone number was 898-8973. Rather, it contends, the document was offered for the purpose of demonstrating that Donald Lawson knew defendant and Lowell Gilmore.

Defendant relies on the case of *People v. Kneller* (1980), 83 Ill. App. 3d 325, 403 N.E.2d 1252, for the proposition that the address book was hearsay evidence. However, *Kneller* is factually distinguishable from the case before us. In *Kneller* the victim of a robbery testified that he had received a phone call from the mother of the defendant. The robbery victim testified that the caller stated that she was Dennis' mother. Defendant's first name was Dennis. After a hearsay objection he testified that she said she had found the victim's checkbook in her son's car. The car had just been returned from the police pound. On appeal this court held that testimony regarding this checkbook was rank hearsay and it was error to allow it into evidence. However, unlike *Kneller*, here there is independent corroboration of where the phone or address book was found. Officer Cardinale testified as to the fact that the address book was found in the Lawson vehicle. He could be, and was, cross-examined covering the address book. Therefore, *Kneller* is inapposite.

Hearsay has been defined as follows:

" 'Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter.' " *People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741.

■ According to this definition, an out-of-court statement or writing offered for a purpose other than for the truth of the matter asserted is not hearsay. (See E. Cleary & M. Graham, Handbook of Illinois Evidence 393 (3d ed. 1979).) In light of this we believe that the address book was not hearsay. However, a question remains as to its authenticity or relevancy.

■■ ■ The State conceded some shortcomings with the exhibits, such as the lack of proof whose handwriting the book was in or whether it actually belonged to Lawson. As the State indicated, the telephone book was offered to show a link between defendant and the two individuals who had either delivered or purchased stolen vehicles, Lawson and Gilmore. Both were named co-conspirators. This is a question of what weight should be given to the evidence and a question for the jury to decide. Circumstances which tend to make a point in issue more or less probable may be placed into evidence. See *People v. Nelson* (1980), 92 Ill. App. 3d 35, 42, 415 N.E.2d 688, 695, where the prosecutor's inquiry as to defendant's interest in the book *Anatomy of a Murder* was upheld as relevant.

The defendant contends that the admission of the record of the telephone calls, both the telephone bill of Lawson and the service record showing the three calls made from Lawson to defendant's number, was also an admission of hearsay documents. He contends that such records require some proof of who made the calls or what was said. On the other hand, the State contends that such records fall within the business records exception to the hearsay rule.

The theory upon which entries in the regular course of business are exceptions to the hearsay rule can be simply stated: since their purpose is to aid in the proper transaction of business and they are useless for that purpose unless accurate, motive for following a routine of accuracy is great and the motive for falsifying nonexistent. E. Cleary & M. Graham, Handbook of Illinois Evidence 438 (3d ed. 1979).

Further, with regard to the use of business records as evidence the Legislature has stated:

"All other circumstances of the making of such writing or re-

cord, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility." Ill. Rev. Stat. 1979, ch. 38, par. 115—5(a).

█▌ Thus, considering the fact that these exhibits were introduced by the keeper of records for the telephone company, they were properly admitted as exceptions to the hearsay rule.

Defendant's second contention is that the trial court erred in allowing the State's key witness, Sandra Mister, to testify about conversations she had with the deceased co-conspirator, Donald Lawson. The defendant recognizes the rule that hearsay utterances made in furtherance of a conspiracy may be admitted. Both at trial and on appeal defendant urges that this rule is applicable only upon a *prima facie* showing of a conspiracy. Citing *People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215, the defendant contends that this *prima facie* showing of conspiracy was not made.

██ The State responds with two arguments. The first is that none of the complained-of testimony from Mister was hearsay, and, therefore, the rule was inapplicable. It contends that the Mister testimony, especially the instructions from Lawson, were admissible because none of the evidence was introduced to show the truth of Lawson's instructions to Mister. Rather it urges the evidence was introduced to show who had told Mister what to do or to show why she acted as she did. Lawson's credibility was not an issue because Mister could be cross-examined. We agree, Lawson's instructions to her were not hearsay.

██ On the other hand, the State also argues that even if the Mister testimony was hearsay, it was a hearsay utterance in furtherance of a conspiracy under *People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215. In the case before us, as well as in *Goodman*, it appears there was sufficient evidence of a conspiracy. Mister testified that she had known Lawson from 1976 until his murder in 1979. She had worked for him delivering stolen cars and had met the defendant for the purpose of delivering a stolen car to him. Further, the telephone records and address book provide the requisite independent evidence sufficient to show a *prima facie* case of conspiracy. Although not as strong as the independent evidence shown in *Goodman*, we believe the evidence here was sufficient. While it is preferable for independent evidence of conspiracy to be introduced prior to the introduction of co-conspirators' declaration (*United States v. James* (5th Cir. 1979), 590 F.2d 575, 581-82), there is no mandatory rule to this effect. *People v. Goodman* (1980), 81 Ill. 2d 278, 284, 408 N.E.2d 215.

■ Defendant's contentions regarding the reliability of Mister's testimony are similar to those raised in *People v. Link* (1981), 100 Ill. App. 3d 1000, 427 N.E.2d 589, where the testimony of an accomplice to murder was argued to be unworthy of belief because of inconsistencies and the beneficial plea bargaining arrangement that had been made. We believe, however, that the grant of immunity that Mister received, just as the plea bargain received by the witness in *Link*, is not sufficient reason for an accomplice's testimony to be considered unworthy of belief; especially where the jury has resolved the issue of credibility by its verdict.

■ Defendant next urges that the trial court erred in denying his motion to discharge the petit jury panel. Defendant's motion, brought pursuant to section 114—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—3), and supported by affidavit, contended that the jury panel was improperly selected and was not drawn as required by statute.

Illinois statutes have a specific procedure for drawing grand and petit jurors. Section 9 of "An Act concerning jurors ***" (Ill. Rev. Stat. 1979, ch. 78, par. 32) provides that the chief judge of the circuit court of the county shall certify to the clerk the number of petit jurors that will be required each month. The clerk is then to repair to the office of the jury commission and in the presence of two jury commissioners or a jury commissioner and a judge of the circuit court of the county (Ill. Rev. Stat. 1979, ch. 78, par. 31(c)) proceed to draw by lot the necessary number of names from those made available for the drawing. In the situation where additional jurors are needed a similar procedure is to be followed.

The State concedes that no jury commissioners were present at the time of jury selection. It contends, nonetheless, that the procedure followed substantially complied with the statutory provisions.

The record reveals that a program for random selection of jurors in Kane County was set up by an employee of the data processing department of the county, an individual who was not a jury commissioner. A deputized clerk, Connie Browning, scheduled the program for execution by the computer. No jury commissioners were present when the program was loaded into the computer. The data processing director testified that he had control over the computer random numbered generator program. He testified that the actual selection of the jurors was done by computer.

The State contends that the fact that the computer operators loaded the program into the computer would have little if any effect on the actual selection of the jury venire.

We believe that the manner in which the jury was selected in this case was not in compliance with the statutory procedure. Section 8(c) of "An Act concerning jurors ***" (Ill. Rev. Stat. 1979, ch. 78, par. 31(c)) requires the presence of certain officials at such drawings. These officials were not present when the selection was made. The use of a computer to draw by lot may be consistent with the requirements section 9, but its use does not preclude compliance with the other requirements of that section. Because we have found error, we turn to the question of whether this error was harmless.

The defendant contends that it was error for the trial court to deny his motion to discharge the panel. He contends that the court was required to grant his request for discharge for the reasons discussed and because of the following statute:

"If the court finds that the jury panel was improperly selected or drawn the court shall order the jury panel discharged and the selection or drawing of a new panel in the manner provided by law." Ill. Rev. Stat. 1979, ch. 38, par. 114—3(d).

While we have found error here, we believe that this error was harmless. Because the error here did not contribute to the finding of guilty, we believe it was harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v. Landgham* (1970), 122 Ill. App. 2d 9, 257 N.E.2d 484, *cert. denied* (1971), 402 U.S. 911, 28 L. Ed. 2d 652, 91 S. Ct. 1389.

Another statutory provision must be considered when considering a challenge to a petit jury. This provision states:

"No objection, exception or challenge to any petit juror or grand juror or to any panel or petit or grand jurors shall be allowed at any time because of any failure to comply with the provisions of this act or of the said rules, unless the party urging the same shall show to the court that actual and substantial injustice has resulted or will result to him, because of the error or defect charged." Ill. Rev. Stat. 1979, ch. 78, par. 35.

In the case at bar, defendant makes no showing, either at trial or on appeal, of any actual and substantial injustice that resulted to him.

The case before us is unlike the situation that was addressed in *People v. Bedard* (1957), 11 Ill. 2d 622, 145 N.E.2d 54. In *Bedard* a conviction was reversed after the trial court permitted additional jurors to be summoned personally by the sheriff rather than from a jury commissioner's list. Of the 12 jurors chosen by the sheriff, five were old friends or employees. Defense counsels' complaints in this regard resulted in prejudicial remarks from the trial judge. Our supreme court found that because the sheriff's office was interested in criminal

prosecutions, a group of jurors who are his friends puts defendant at a disadvantage. The defendant in *Bedard* was granted a new trial. *Bedard* is clearly distinguishable from the case at bar, where the main problem was that the jury commissioners were not present for the drawing. There is no reason to believe that the computer operators who were present were in any way biased towards one side or the other. Unlike *Bedard*, no prejudice or substantial injustice resulted in the case before us.

■ Defendant's final contention on appeal is that the prosecutor committed reversible error in closing argument by making prejudicial, inflammatory statements. He contends that during closing argument the prosecutor repeatedly referred to the page from the address book which contained defendant's phone number. He contends this was improper and was done in an effort to shift the burden to defendant of explaining why his name and phone number were on the page. However, because this particular exhibit was deemed to have been properly admitted, we believe that reference to it in closing argument was proper. *People v. Williams* (1968), 40 Ill. 2d 522, 529-30, 240 N.E.2d 645, *cert. denied* (1969), 393 U.S. 1123, 22 L. Ed. 2d 129, 89 S. Ct. 1004.

■■ The record reveals that the prosecutor made reference to defendant's failure to explain how he came about owning his present car. Defendant contends this was highly prejudicial and constituted plain error. We disagree. These statements were objected to and the objection was sustained. The comment was removed from the jury's consideration and did not, therefore, constitute reversible error. (*People v. Bonzi* (1978), 65 Ill. App. 3d 927, 382 N.E.2d 1300.) Further, our review of the record does not reveal any comments that were so prejudicial as to warrant reversal.

For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

SEIDENFELD, P. J., and NASH, J., concur.