2020 IL App (1st) 171665-U
No. 1-17-1665
Order filed February 10, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 10601 |
| | ) | |
| TREVOR ANDERSON, | ) | Honorable |
| | ) | Paula M. Daleo, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Griffin and Justice Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court did not abuse its discretion in admitting an officer's out-of-court statement because it was not hearsay. Thus, defendant was not denied a fair trial when the prosecutor referred to the statement in closing argument as proof of defendant's identity as the offender.

¶ 2    A jury convicted Trevor Anderson on one count of aggravated fleeing or attempting to elude a police officer and one count of driving while his license was revoked. On appeal, Anderson argues the State's closing argument deprived him of a fair trial because the prosecutor relied on improperly admitted hearsay testimony. We affirm. The statement was not hearsay under Illinois

Rule of Evidence 801(d)(1)(B) (eff. Oct. 15, 2015), and because the statement does not constitute hearsay, the prosecutor could refer to it in closing argument.

¶ 3                                     Background

¶ 4      By indictment, Anderson was charged with multiple offenses arising from an incident on March 10, 2014. The State proceeded on one count of aggravated fleeing or attempting to elude a police officer (625 ILCS 5/11-204.1(a)(4), (b) (West 2014)), and one count of driving while his driver's license, permit, or privilege to operate a motor vehicle was suspended or revoked (625 ILCS 5/6-303(a) (West Supp. 2013)).

¶ 5      Before trial, the State filed a motion *in limine* to admit Maywood police officer George Adamidis's out-of-court statement made while stopping Anderson for driving while with a revoked license. According to the State, as Adamidis approached Anderson's car, he saw Anderson reach towards the gearshift. Anticipating Anderson would drive away, Adamidis said, "Trevor, don't do it." The State argued the statement showed Anderson's willfulness in fleeing and did not fall within the hearsay exception because it merely involved a "statement of direction." At the hearing on the motion, the State added that the statement constituted an excited utterance and did not contain an "assertion of fact." Anderson objected, contending that the statement qualifies as hearsay and identified Anderson as the offender, which would bolster Adamidis's in-court testimony that he curbed the car because he recognized Anderson. The court confirmed with the State that Adamidis would testify he recognized Anderson from encounters and granted the motion to admit the statement without further explanation.

¶ 6      At trial, Maywood police officer George Rangel testified that on March 10, 2014, he was on patrol with Adamidis driving eastbound on Adams Street towards Ninth Avenue. As the officers

approached a stop sign, Rangel saw a sedan driving northbound on Ninth and recognized the driver as Anderson, whom he knew through contacts had a suspended or revoked license. The officers activated their emergency equipment and followed Anderson as he turned right. Anderson traveled a block before being pulled over.

¶ 7    The officers stopped behind Anderson. As they walked toward the rear of Anderson's car, Anderson moved to put it into drive and Adamidis "yelled [,] don't do it, Trevor." Anderson then drove away. The officers followed Anderson with their emergency equipment activated. Eventually, the officers lost sight of Anderson and terminated their chase.

¶ 8    While on patrol a couple months later, on June 3, Rangel saw Anderson in a car and Anderson saw Rangel. Anderson got out and began walking towards his home. Rangel radioed other units to set up a perimeter and Anderson was arrested later that day.

¶ 9    On cross-examination, Rangel testified that on March 10, he saw Anderson's face for "[a] few seconds" when Anderson's car was moving, and saw the "top of his face" through the rearview mirror on Anderson's car when Anderson's car stopped. As Rangel approached the rear passenger's side, he saw Darius Blackwell, who looked backwards at Rangel, in the passenger's seat. Anderson was not the registered owner, and Rangel did not contact him or the registered owner following the incident.

¶ 10    Adamidis testified consistently with Rangel about the March 10 stop. Adamidis recognized Anderson as the driver they curbed and stated that about a minute passed between when they saw Anderson and when he stopped. Adamidis last encountered Anderson two months earlier, and knew his license was revoked. When Adamidis approached, he saw Anderson use his right hand to place the car in drive, and "yelled out loud [,] don't do it, Trevor."

¶ 11 On cross-examination, Adamidis said he did not contact Anderson or the registered owner of the car. In his incident report, he did not include that Blackwell was in the car because Anderson "was the only offender." Adamidis stated that he approached the rear bumper on the driver's side and saw Anderson through the side mirror. He did not recall testifying at a preliminary hearing that he approached from the rear passenger's side.

¶ 12 The State produced a certified record showing that on March 10, 2014, Anderson's driver's license was revoked.

¶ 13 Anderson entered a stipulation that if called, June Dakuras, a certified shorthand reporter, would testify that she transcribed Adamidis's testimony at a preliminary hearing. Adamidis stated he was "unable to reach" the driver's side window of Anderson's car, but "came to the rear passenger's side." Anderson also produced a certified copy of the registration of the car officers followed on March 10, 2014, which showed that Anderson was not the registered owner.

¶ 14 Jasmine Wiley, Anderson's fiancé, testified that she and Anderson were at their home on June 3, 2014. In the afternoon, Wiley drove them to her doctor's appointment in a rental car. Around 5 p.m., they came home. As Wiley parked, a police car driving the wrong way down a one-way street slowed down alongside her. She and Anderson got out of the rental car and entered the house. Inside, Wiley looked out the window and saw officers surrounding the car. Wiley sent Anderson to find out what was going on. She next heard a "loud commotion like a bunch of screaming," went outside, and saw Anderson lying on the ground in the driveway. On cross-examination, Wiley testified that Anderson knew Blackwell.

¶ 15    In closing, the State argued that Anderson's identity as the driver curbed by Rangel and Adamidis on March 10, 2014, was shown through their testimony that they recognized him. The State said:

> "What did *** Adamidis say right before Trevor took off? He said, 'Don't do it, Trevor.' He testified to that. Rangel also testified to that. That was an excited utterance. 'Don't do it, Trevor.' He knew it was Trevor. He shouted his name out."

The State posited that Adamidis's statement on approaching the car served as a "truth detector***" for the identification of Anderson as the offender.

¶ 16    In response, defense counsel countered that the officers' testimony failed to satisfy the State's burden to prove Anderson committed the alleged offense. In rebuttal, the State again emphasized that Anderson and the officers knew each other, and that Adamidis yelled out Anderson's name when approaching the vehicle.

¶ 17    The trial court then provided jury instructions. Relevant here, the court admonished the jury that "[n]either opening statements or closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded." The court also provided the jury with factors relevant to weighing the identification testimony of a witness, such as the witness's opportunity to view the offender during the offense, the witness's degree of attention during the offense, the witness's level of certainty, and the time between the offense and the identification confrontation.

¶ 18    During deliberations, the jury sent the trial court two notes. First, the jury asked, "What is the next step if we are split in our opinion?" By agreement of the parties, the court instructed the jury to continue deliberating. Second, the jury asked, "Is there guidance for what constitutes

positive identification beyond a reasonable doubt?" The court again responded that the jury should continue deliberating.

¶ 19   The jury found Anderson guilty of aggravated fleeing or attempting to elude a police officer and aggravated driving while his license was revoked. Anderson filed a posttrial motion, arguing the State failed to prove his identity as the offender beyond a reasonable doubt. The trial court denied Anderson's motion.

¶ 20   After a hearing, the trial court sentenced Anderson to concurrent terms of five years' imprisonment on each count. Anderson filed a motion to reconsider sentence. The court resentenced him to three years' imprisonment for aggravated driving.

¶ 21                                    Analysis

¶ 22   Anderson argues the State's closing argument denied him a fair trial because Adamidis's out-of-court statement, "don't do it, Trevor," was not an excited utterance and was only admissible to show Anderson ignored a police command, not for the truth of the matter asserted—that Anderson was the offender.

¶ 23   Initially, Anderson concedes that he did not properly preserve this issue for appeal. A defendant must object both at trial and in a written posttrial motion to preserve for review. *People v. Reese*, 2017 IL 120011, ¶ 60. Although Anderson objected to the admission of the statement before trial, he failed to object to the State's use of the statement in closing argument and did not challenge the trial court's evidentiary ruling or the State's closing argument in his posttrial motion. So, Anderson has forfeited review.

¶ 24   Instead, Anderson asserts that his claim may be reviewed for plain error. Under the plain error doctrine, the appellate court may review a forfeited claim when a clear or obvious error

occurred, and either (i) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (ii) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Anderson contends the first prong applies.

¶ 25                                    *Was there Error?*

¶ 26    Initially, we must determine whether an error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). We begin our analysis with the trial court's evidentiary ruling.

¶ 27    The trial court overruled Anderson's hearsay objection without identifying the basis of its ruling—whether the testimony contains hearsay and, if it does, what exception applied. Since we may affirm a trial court's ruling on any basis supported in the record (*People v. Dinelli*, 217 Ill. 2d 387, 403 (2005), we examine whether the testimony presents hearsay.

¶ 28    The United States and Illinois Constitutions guarantee a defendant the right to confront witnesses. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. Hearsay is a statement, other than one made by the declarant while testifying, "offered in evidence to prove the truth of the matter asserted." Ill. Evid. R. 801(c) (eff. Oct. 15, 2015). A statement does not trigger hearsay if, "[i]n a criminal case, the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is *** one of identification of a person made after perceiving the person." Ill. Evid. R. 801(d)(1)(B) (eff. Oct. 15, 2015).

¶ 29    The admission of evidence falls within the sound discretion of the trial court. *People v. Becker*, 239 Ill. 2d 215, 234 (2010). We only reverse a decision to admit evidence if the trial court abused its discretion. *Id.* Adamidis testified and was subject to cross-examination at trial over his

out-of-court statement, "don't do it, Trevor," which he made immediately after recognizing Anderson as the driver he pulled over. This qualifies the statement as admissible under Illinois Rule of Evidence 801(d)(1)(B) (eff. Oct. 15, 2015).

¶ 30    Anderson also contends that the prosecutor committed reversible error in closing argument by repeating the out-of-court statement as proof of Anderson's identity as the offender. Anderson asserts that because the statement was not an excited utterance, it was only admissible to show that Anderson willfully ignored Adamidis's command, but the State used it to bolster the officers' testimony that Anderson drove the sedan. According to Anderson, the closeness of the evidence makes this highly prejudicial as evidenced by the jury sending the court two notes. But the statement not amounting to hearsay means that the prosecutor could refer to it in closing argument. See *People v. Reed*, 108 Ill. App. 3d 984, 993 (1982) (prosecutor's reference to properly admitted exhibit in closing argument was proper).

¶ 31    Finally, there being no error, we need not discuss Anderson's claim of ineffectiveness for his counsel's failing (i) to object during closing arguments to the State's reference to Adamidis's statement and (ii) to include the issue in a posttrial motion. See *People v. Land*, 2011 IL App (1st) 101048, ¶ 146 (declining to consider ineffective claim where no error).

¶ 32    Affirmed.