THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GREGG DAVID, Defendant-Appellant.

Third District    No. 79-357

Opinion filed May 13, 1981.—Rehearing denied June 22, 1981.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

After a jury trial, the defendant, Gregg David, was convicted of two counts of criminal damage to property (Ill. Rev. Stat. 1977, ch. 38, par. 21—1(a)). The defendant was sentenced to a 2½-year term of imprisonment on the first count and a 364-day concurrent term of imprisonment on the second count.

The defendant seeks that his conviction be reversed and the cause be

remanded for a new trial for the following reasons: (1) the trial court erred in refusing to suppress the tire iron found on the floor of the defendant's car following his arrest; (2) the court reporter's failure to record and transcribe the closing arguments denied the defendant his right to an effective appeal; (3) alternatively, the failure to transcribe the closing arguments was due to defense counsel's ineffective representation, which served to deny the defendant an effective appeal.

At trial the following facts were revealed. During the early morning of October 9, 1978, the glass windows in two adjacent stores at Route 116 in Farmington, Illinois, were broken. Cost of the damages was $115.75 at one store (count II), and $463 at the second store (count I).

An employee of The Farmington Pizza Company, an establishment located across the street from the stores, testified that at some time between 1 and 1:30 a.m. on October 9, 1978, she observed a dark-colored late model Oldsmobile with a white stripe slowly drive past the store and go around behind the store.

Thomas Edward Nelson testified that on October 9, 1978, at about 1:30 a.m., he was driving east on Route 116 in Farmington, Illinois. As he reached the site of the crime, Nelson turned into the parking lot and observed a car parked on the side of the building. At that time the parked car took off at a high rate of speed, drove through a ditch and headed west on Route 116. Nelson testified that the car was a late model dark blue or black 442 Oldsmobile with a white stripe. He testified that car contained a single male.

Nelson followed the vehicle until it turned onto Route 78, which leads to Canton, Illinois. After seeing a police car with its lights on, Nelson departed. About an hour later Nelson identified the defendant's car as the auto he had seen in the parking lot where the damage was discovered.

At 1:56 a.m. on October 9, 1978, Canton city police officer Darel Rose received a message over his radio that the Farmington Police Department had put out a request to stop a dark-colored Oldsmobile Cutlass with a white stripe on it. The subject was wanted for criminal damage to property. At 2:10 a.m. Officer Rose observed a vehicle matching the broadcast description traveling east on Locust Street in Canton, Illinois. He stopped the vehicle. The driver was Gregg David. Officer Rose informed David he had received a report of criminal damage to property and David's vehicle matched the description of the car involved. David stated he would like to talk about it at the police station. Officer Rose agreed and followed the defendant to the Canton police station.

En route, Officer Rose received another radio message informing him the Farmington police wished David held until they arrived at the Canton police station. Upon arrival at the Canton police station, Gregg David was arrested and advised of his *Miranda* rights. David's only response was "no contest."

When the Farmington police arrived, Officer Rose took them out to David's car. Sod and dirt were sticking out from underneath the left rear bumper. Officer Rose shined his flashlight into the auto and observed a tire iron lying on the right rear floor. Farmington police officer Curt Morgan removed the tire iron from the car.

Officer Morgan testified the tire iron was scratched and had glass particles embedded in it. The tire iron was allowed into evidence over the defendant's objection that a search warrant should have been obtained prior to its seizure.

The State's Attorney, Thomas J. Homer, testified that the defendant voluntarily presented himself at the State's Attorney's office on October 10, the day following the incident, because the defendant wanted to talk to the State's Attorney. After being fully advised of his legal rights, the defendant made a full statement to the State's Attorney in the presence of another employee of the office. In this statement, the defendant admitted fully his guilt and accurately described the events of the evening, the factual circumstances, and his conduct in breaking the windows as charged. His statement completely complements and corroborates the other evidence in the case, even to the extent of his admission that he used the tire iron to break the windows. The defendant apologized for his conduct, saying that he was sorry, and offering as an excuse that he was drunk. He wanted to know if he could pay for the damages.

■■■ As his first ground for reversal, defendant argues that the tire iron should not have been admitted into evidence. He claims that at the time of the seizure of the tire iron, the officers did not have sufficient facts to give rise to a reasonable belief that the tire iron constituted evidence of criminal activity. Such argument is inane.

To recap the circumstances preceding the seizure of the tire iron: The police had a report of broken store windows. Within 15 minutes of that report, they observed the defendant's car, which matched the description of the car that had been reported as leaving the scene of the crime. Having stopped the car, they observed in plain view the tire iron lying on the right rear floor. It was reasonable to conclude that this was a probable tool used in the window breaking. The law is clear that a police officer may lawfully seize an item in plain view without a warrant if he views the object from a place where he has a right to be and if the facts and circumstances known to him at the time he acts give rise to a reasonable belief that the item seized constitutes evidence of criminal activity. Moreover, even if the defendant's argument in this regard had any merit, and it is totally devoid of merit, the admission of the tire iron into evidence was not crucial to the case. Evidence of the defendant's guilt, quite aside from the tire iron, was overwhelming.

■■ Defendant next alleges error in claiming that the court reporter violated an alleged statutory duty to record the closing arguments. There is

no law which requires the recording of the closing arguments. Neither is there some affirmative duty for a court reporter to record matters *sua sponte*. Someone must make the request or give direction to the court reporter to do something. The defendant made no request that final arguments be recorded. He made no objection that they were not recorded. He simply let the final arguments go on without recording. We recognize the common practice of trial courts and attorneys in often ignoring the transcription of final arguments. This practice is indulged in by seasoned trial counsel and by experienced and able trial judges. It is neither an indication of incompetence of counsel, nor of judicial carelessness. Rather, it is done to save judicial cost and manpower.

Having failed to make any point of this matter during the final arguments, defendant now asks the appellate court to reverse his conviction because there is no transcription of final arguments. This we will not do. To do so would invite the practice of deliberately building error into the record. This is commonly called "sandbagging."

■■ Moreover, our supreme court has, by rule, furnished a method for reconstructing an absent record by preparation of a bystander's report. (Ill. Rev. Stat. 1977, ch. 110A, par. 323(c).) The rule requires that appellant prepare and file a proposed report of proceedings within 14 days after the notice of appeal was filed. The 14 days may be extended if a request for extension is made within that 14-day period. In the instant case, a bystander's report was prepared by defendant and was submitted to the trial court after the passage of one year from the date of the trial and without an authorized extension. The trial court refused to certify the bystander's report because the passage of one year from the date of the trial and the submission of the bystander's report made it impossible to reconstruct the final arguments. The trial court pointed out that neither the judge nor the State's Attorney had an independent recollection of the final arguments after the one-year time lapse. The ruling of the trial judge denying the certification of the bystander's report was proper. Timeliness is compellingly necessary in the case of a bystander's report because of the frailty of human memory. Completeness is necessary in order that undue emphasis not be placed on isolated matters that may be out of context. Thus, we reject defendant's request that his conviction be reversed for lack of a reviewable transcription of the final arguments.

For the reasons given, the judgment of the trial court is affirmed.

Affirmed.

ALLOY, J., concurs.

Mr. JUSTICE STOUDER, specially concurring:

I agree with the result reached by my colleagues, but I do not agree with all of the reasoning which supports such result. My disagreement with the opinion of the majority relates to its observations regarding the absence of recordation and transcription of the final arguments. I believe the absence of a transcript of the final arguments of counsel was the result of error but not reversible error.

According to the majority: (1), the court reporter is under no statutory duty to record or transcribe final arguments and the recordation of final arguments must be requested by an attorney; (2), if recordation is not specifically requested it is waived; (3), waiver of final arguments is frequently waived by skilled and competent attorneys and hence waiver is not evidence of incompetence or ineffectiveness of counsel, and (4), a bystander's report is a satisfactory substitute for a verbatim transcript.

Probably one of the more basic elements of our present review procedure is the necessity for a full and complete written record of the trial court proceeding under review. In aid of this requirement the development and evolution of methods of verbatim recording of testimony and other oral portions of a trial proceeding have greatly enhanced the quality of the written record which we are asked to review. Without an adequate record or without an acceptable alternative litigants are in a poor position, if not an impossible one, to avail themselves of redress through a review process. Fundamentally then, recordation of all that transpires at trial and transcription of so much that is relevant on review is our starting point in considering the fairness of our appellate procedure.

With reference to the claim by the majority that there is no statutory duty on the part of a court reporter to record the final arguments of counsel, the majority has not referred to any statute which describes and sets forth the duties of a court reporter, and consequently there is no support for any conclusion as to what the statutory duties of a court reporter are or are not. However, section 5 of the Court Reporter's Act (Ill. Rev. Stat. 1979, ch. 37, par. 655) states:

> "* * * make a full reporting by means of stenographic hand or machine notes, or a combination thereof, of the evidence and such other proceedings in trials and judicial proceedings to which he is assigned by the chief judge, and the court reporter may use an electronic instrument as a supplementary device.
>
> * * *
>
> The court reporter shall furnish forthwith one transcript of the evidence and proceedings in a trial or other judicial proceeding correctly made to any party to the trial or proceeding upon the request of such party or his attorney."

Since the final arguments of counsel are part of the proceedings (*People v. Ring* (1967), 89 Ill. App. 2d 161, 232 N.E.2d 23), I find no support for a conclusion that the statutory duties of the court reporter do not include recording the final arguments of counsel. Both the letter and intent of the statute are that the reporter record the entire trial, and there is nothing in the rule which suggests it is incumbent on counsel to request that the reporter take this portion of the trial or that portion of the trial. No case has been called to our attention, and I have found none, which interprets or applies the foregoing statute as requiring a request by counsel before the final arguments need be recorded by a reporter. In *People v. Smith* (1969), 42 Ill. 2d 479, 248 N.E.2d 68, the court observed that recording the final arguments of counsel was not requested. However, in *Smith* neither the statute nor any statutory duty nor waiver are discussed, and since a portion of the prosecutor's final argument was recorded and transcribed it well may be inferred the entire argument was recorded but only partially transcribed because counsel believed that was all that was necessary. *People v. Edwards* (1978), 74 Ill. 2d 1, 383 N.E.2d 944, is another partial transcription case where initially stenographic recording was waived and only part of the machine recording was transcribed. Thus I find no support for the majority's major premise that the reporter is under no duty to record the final arguments unless and only unless requested to do so. As will be noted later there is, so far as I know, absolutely no benefit to the defendant not to have the final arguments recorded and consequently there is no reason for not recording the final arguments as a matter of course rather than only upon request.

According to the majority, if recordation is not requested it is waived. As I have indicated earlier I believe the court reporter is under an affirmative duty to record the final arguments of counsel rather than the contrary opinion of the majority that the duty arises only when requested. Even were a request necessary, I believe the record should demonstrate, as this one does not, that counsel for both parties affirmatively waived the recording of final arguments. Waiver ought not to be implied from a silent record. Final arguments are an important element of a jury trial, and errors which may occur during this portion of the trial may well contribute to the fairness of the proceeding to the extent that at a bare minimum the record should reflect the deliberate decision of trial counsel on such an important subject.

In an effort to minimize the effect of or justify the absence of a transcript of the final arguments, the majority suggests there is "* * * the common practice of trial courts and attorneys in often ignoring the transcription of final arguments." Although this practice is attributed to "* * * seasoned trial counsel and able trial judges * * *," the only

explanation or justification for the practice is "* * * to save judicial cost and manpower."

Nowhere in the opinion of the majority is there even an intimation of how the absence of recording and transcription of the final arguments is or can be of any benefit to the defendant, how there is any tactical advantage to such a practice, or, finally, why the practice may not, as it has in this case, result in serious disadvantage to the defendant. While we are all interested in the efficient use of manpower, where a practice can be only disadvantageous to the defendant and of advantage to the People, I doubt that it is a practice utilized by seasoned or competent attorneys. Since the transcript of final arguments is for all practical purposes an essential element for proper appeal if errors are based on the final arguments, I believe that waiver of recording would be evidence of unprofessionalism of trial counsel as a matter of law. However, since I fail to find any justification, either legal, practical or tactical, for waiving the recording of final arguments in a criminal case, I think it would behoove defense counsel, trial judges and court reporters to see that the final arguments are recorded. This involves no "sandbagging" of the trial judge or the trial system but is rather a plain recognition that the rights of the defendant and particularly his right of appeal ought not to be limited or impaired by the unjustified conduct of his trial counsel.

Finally, the majority suggests that the alternative of a bystander's report furnishes an adequate alternative to a verbatim transcript, and, indeed, *People v. Edwards* (1978), 74 Ill. 2d 1, 383 N.E.2d 944, does make this assertion. However, the life-saving potential of a bystander's report is more apparent than real, and it is unlikely that as a saving device it is much more than a hope. I doubt that any two lawyers and a judge could agree on a bystander's report made within several hours after the final arguments were delivered, let alone the prospective agreement after days, weeks or months had elapsed. Thus I conclude that the remote possibility of a bystander's report is not a procedure that satisfactorily takes the place of recording and transcribing final arguments.

*People v. Edwards* (1978), 74 Ill. 2d 1, 383 N.E.2d 944, seems to hold that negligence of defense counsel in preservation of the record of final arguments is not ineffective assistance of counsel, and for that reason I conclude that the absence of a written transcript is not reversible error.