THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES LOGGINS, Defendant-Appellant.

First District (4th Division)   No. 82—1730

Opinion filed July 3, 1985.—Rehearing denied July 15, 1985.

JOHNSON, J., specially concurring.

Dennis M. Doherty, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Thomas Gearen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant was convicted of armed robbery and sentenced to serve a 15-year term in the Illinois Department of Corrections.

On appeal, defendant claims as error the trial court's denial of his motions (1) to suppress evidence, (2) to compel the State to disclose the identity of a citizen-informant, and (3) for a mistrial based on a discovery violation; he also claims he was denied a fair trial by (4) the admission of certain hearsay evidence, (5) the State's attempt to shift the burden of proof and its misstatement of the evidence, and (6) the systematic exclusion of blacks from the jury.

We affirm the decision of the trial court.

BACKGROUND

On May 18, 1981, at approximately 7 p.m., Cynthia Glenn completed her shopping at the Jewel food store in Oak Park, took her groceries, and walked out to the parking lot. As she was placing her groceries in the trunk of her car, she heard a man's voice yell, "Hey." Glenn turned around to see a man, later identified as defendant Charles Loggins, sitting in the front seat of a car some 3 to 5 feet way, pointing a gun at her.

Defendant then said to Glenn, "If you scream, I will blow your head off," and ordered her to put her groceries in the back seat of his car. He then asked Glenn for her purse and her car keys, all the while looking directly at her. After Glenn gave defendant her keys, defendant told her to walk to her car and act as if she were getting into it. She walked to her car, and defendant drove away.

Glenn turned around and watched defendant's car drive off, making a mental note of the license plate number and noticing a line of rust across the back of the car. She then ran into the store and told a man at the main desk that she had been robbed. The man called the police. An officer came in response to the call, interviewed Glenn and another witness, and then drove Glenn home.

At approximately 10 p.m. that same evening, Glenn was with friends at a bowling alley in Forest Park when two officers arrived and asked to speak to her. After speaking to them about the crime, Glenn was shown a photo album containing 97 photographs. She was instructed by the officers to go through the album twice and attempt

to identify a photo of the man who had robbed her earlier that evening. After looking through the album, Glenn picked out a photo of defendant.

The following afternoon, a citizen-informant delivered to the police station some of the proceeds of the crime, which he had found in a trash can behind the building in which defendant lived. The informant told the police the defendant's address, where he was employed, and the location and description of defendant's car. An arrest warrant was issued shortly thereafter.

Having obtained a warrant, Officers Schoff, Kelly, and Toll proceeded to defendant's address and knocked on his apartment door. When defendant opened the door and saw the officers with their weapons drawn and badges displayed, he immediately slammed the door. Officer Kelly then heard footsteps and a disturbance inside the apartment and a male voice say, "Come in and get me, fuckers." The officers shouted through the door to defendant to lie down on the floor, place his hands in front of him, and crawl towards the door. When the officers opened the door, defendant was lying on the living room floor in a prone position.

Officers Kelly and Toll restrained defendant, and Kelly told Schoff to get defendant's weapon and be careful, because he did not know if there was anyone else inside the apartment. Kelly asked defendant if he had a weapon or where the weapon was located, and defendant said, "It's under the pillow," referring to a pillow lying near him on the floor. Kelly lifted up the pillow and found the gun. Kelly announced to the other officers that the gun had been found.

Schoff stepped over the defendant and pushed open the door to the bedroom, wherein he saw a purse standing on the dresser. Schoff radioed the police communications center and requested a description of the purse that had been taken from Glenn the previous day. Kelly, hearing Schoff's inquiry, responded with a description of Glenn's purse. Schoff entered the bedroom and opened the purse, in which he found credit cards and identification belonging to Glenn. Schoff then radioed communications again and asked for the name of the victim of the robbery. Upon learning that Glenn was the victim's name, Schoff took possession of the purse. Defendant was placed under arrest, and defendant's vehicle was seized and brought to the police station.

The following day, Glenn was called down to the police station to view a six-man lineup. After viewing the men and hearing each man speak the words which had been spoken to her during the robbery, Glenn identified defendant. She was then taken into an office and shown a billfold, which she identified as the one taken from her by

defendant. She also identified the gun used in the robbery. Glenn then went out into the parking lot and, out of approximately 100 vehicles, identified defendant's car as the one used during the commission of the crime. Glenn identified defendant for a third time in court at trial.

Following a jury trial, defendant was convicted of armed robbery and sentenced to serve a 15-year term in the Illinois Department of Corrections.

He appeals his conviction.

OPINION

I

■■ Defendant first contends on appeal that the trial court erred by denying his motion to suppress physical evidence, namely, the purse taken from defendant's apartment during the arrest and the seizure of his car. The State maintains that the seizure of the purse was proper by virtue of defendant's "invitation" to the officers to enter his apartment, based on the exigent circumstances surrounding the arrest, and under the "plain view" doctrine. The State justifies the warrantless seizure of defendant's car on the basis of exigent circumstances, and argues alternatively that any error resulting from the seizure was harmless.

The search incident to a lawful arrest exception to the warrant requirement, the permissible scope of which has been delineated as an area within the immediate control of the arrestee, can be expanded when used in conjunction with the plain view doctrine. (*People v. Crowder* (1981), 99 Ill. App. 3d 500, 425 N.E.2d 994.) A police officer may lawfully seize an item in plain view without a warrant if he views the object from a place where he has a right to be and if the facts and circumstances known to him at the time he acts give rise to a reasonable belief that the item seized constitutes evidence of criminal activity. *People v. David* (1981), 96 Ill. App. 3d 419, 421 N.E.2d 312.

In the instant case, Officer Schoff viewed the subject purse from the living room, in which defendant was lawfully being arrested. Schoff radioed in to obtain a description of the purse taken during the crime and his co-officer, hearing the inquiry, supplied him with a description that matched the purse on the bedroom dresser. Schoff then entered the bedroom and seized the purse. Because he had an initial right to be in the living room, he viewed the purse from the living room, and he had a reasonable belief, based on his co-officer's description, that the purse constituted evidence of the crime, the seizure of the purse was reasonable.

■ We cannot find, however, that the warrantless seizure of defendant's automobile was similarly justified. The validity of a warrantless search and seizure must be determined on the basis of whether the State has shown that the exigencies of the situation made that course of conduct imperative. (*People v. Grant* (1974), 57 Ill. 2d 264, 312 N.E.2d 276.) Here, the State bases its claim of exigent circumstances on the possibility that proceeds of the crime might still have been present in defendant's car and that the female who shared defendant's apartment could easily have "spirited" the vehicle and its potentially inculpatory contents from the scene.

We find that, in this context, these circumstances fail to constitute the type of exigencies needed to justify the warrantless seizure of defendant's car. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.

However, in light of the overwhelming evidence of defendant's guilt, the improperly seized vehicle did not play a material part in the conviction, and the warrantless seizure does not constitute reversible error.

## II

■ Defendant next argues on appeal that the trial court erred by denying his motion to compel the State to disclose the identity of the citizen-informant who delivered to the police station some of the proceeds of the crime and supplied the police with defendant's address, his place of employment, and a description and the location of his car. The State maintains that the trial court properly upheld the State's "informer's privilege" where the evidence adduced at the pretrial hearing showed that the informant did in reality exist, that he was reliable, and that he did not witness or participate in the crime. We find that the trial court properly denied defendant's pretrial motion.

Supreme Court Rule 412(j)(ii) sets forth the statutorily created informant's privilege, providing that an informant's identity shall not be disclosed where it is a prosecution secret and the failure to disclose will not infringe on the constitutional rights of the accused. (73 Ill. 2d R. 412(j)(ii).) The scope of the government's privilege is limited by its underlying purpose—the protection of the public interest in effective law enforcement, and by the fundamental requirements of fairness. (*People v. Avery* (1978), 61 Ill. App. 3d 327, 377 N.E.2d 1271.) The determination of whether the identity of the informant is a prosecution secret and whether the failure to disclose would infringe on the constitutional rights of the accused must be made by the court. *People v. Perez* (1974), 25 Ill. App. 3d 371, 323 N.E.2d 399.

■ The test to be applied in cases, such as the instant case, where defendant has made a pretrial motion to disclose the identity of the informant, was set forth by the Illinois Supreme Court in *People v. Lewis* (1974), 57 Ill. 2d 232, 235, 311 N.E.2d 685, wherein the court stated that police officers need not invariably be required to disclose an informant's identity in preliminary proceedings if the trial court is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant.

Here, the informant turned over to the police certain proceeds of the crime, told the police where he had retrieved them, gave the police defendant's address, his place of employment, and a description of defendant's car. This information was confirmed both by Glenn's description of defendant's car and license number and by her report of stolen property. It was further confirmed by the surveillance on defendant's apartment and the actual location of his car. Moreover, the informant took no part in defendant's arrest, did not witness or participate in the crime, nor help set up its commission. The trial court made clear its concern for the safety of the informant, especially in light of the fact that he appeared to live in defendant's neighborhood. In view of the accurate information provided by the informant, his lack of knowledge about the crime, and the threat posed to him by the possibility of disclosure, we find that the trial court's denial of defendant's motion to disclose the informant's identity was a proper exercise of its discretion. *People v. Gomez* (1978), 67 Ill. App. 3d 266, 384 N.E.2d 845.

## III

Defendant next contends on appeal that he was prejudiced by the trial court's "rudely interjecting his personal opinion" that identification was not an issue in the case; and, by the State's failure to tender to defendant during discovery a statement made by defendant to the arresting officers.

■ We find no merit to the first part of defendant's contention, finding, from our review of the record, that the objected-to comment made by the trial court had nothing to do with the ultimate issue of identification but rather with the witness' ability to distinguish between different types of weapons and the relevance of defense counsel's questioning in that regard. In addition, the trial court never stated that identification of any kind was not an issue, and, once defense counsel responded to the court's inquiry as to relevance, the court allowed counsel to proceed with his questioning. For this rea-

son, we find that defendant's characterization of the trial court's conduct is completely without merit.

■■ We next address defendant's assertion that he was prejudiced by the State's failure to tender to him a statement made by him to the arresting officers and that the trial court erred by denying his motion for a mistrial based thereon. Defendant specifically refers to the testimony of Officer Kelly, wherein he stated that after defendant had opened his apartment door and slammed it after seeing the officers, he said to them, "Come in and get me, fuckers." The State maintains that because the statement was not inculpatory, because defendant never showed how it prejudiced his defense, and because defendant never moved to strike, to disregard, or for a continuance, the trial court properly denied defendant's motion for mistrial. Because the sanction defendant requested was out of proportion to the discovery violation, we find that the trial court's denial for a mistrial was proper.

Once a trial court determines that a discovery violation has occurred, it may impose any sanction which, in its discretion, it deems just under the circumstances. (73 Ill. 2d R. 415(g).) The preferred sanction is a recess or continuance if the granting thereof would be effective to protect the defendant from surprise and prejudice. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 447 N.E.2d 1029.) A reviewing court will not reverse the trial court's exercise of its discretion in granting a particular sanction in the absence of a showing of surprise or prejudice to the defendant. *People v. Coleman* (1980), 91 Ill. App. 3d 646, 415 N.E.2d 553.

Here, the only sanction defendant requested for the State's discovery violation was an outright mistrial. Defendant neither sought a recess nor a continuance. Furthermore, defendant made no showing as to how he was surprised or prejudiced by the statement. It was therefore a proper exercise of the trial court's discretion to find that the sanction requested was disproportionate to the discovery violation and to deny defendant's motion for mistrial.

IV

■■ Defendant next asserts as error the trial court's admission of certain "hearsay" evidence. The objected-to evidence concerns testimony by police officers that during the course of their investigation, two eyewitnesses reported defendant's license plate number and that a computer license check of the reported number revealed that the car was registered to defendant. The State maintains that defendant waived this issue on review by failing to specifically object to such tes-

timony at trial and, alternatively, that the evidence was not admitted for the truth of the matter asserted but rather to explain the actions of the officers during their investigation. We find that the testimony was properly admitted for the nonhearsay purpose of explaining the officer's actions.

An out-of-court statement not offered for the truth of the matter asserted is not hearsay. (*People v. Reed* (1982), 108 Ill. App. 3d 984, 439 N.E.2d 1277.) A statement used in a criminal prosecution to detail the course of a police investigation, not to prove the truth of the matter asserted, is not hearsay. (*People v. Price* (1979), 79 Ill. App. 3d 1112, 398 N.E.2d 1158.) A police officer may properly testify to the circumstances of an investigation to explain a witness' subsequent conduct, such as how that witness came to identify the defendant. *People v. Bryant* (1984), 123 Ill. App. 3d 266, 462 N.E.2d 780.

Here, investigating officers testified that they received defendant's license plate number from two eyewitnesses and that a computer check of the plate revealed that the car was registered to defendant. As a result of this information, the officers obtained a photograph of defendant and presented a photo album to the victim, who was able to make a positive identification therefrom. This testimony, rather than being offered for the truth of the matter asserted, was clearly admissible to detail the course of the investigation and to explain how the victim made her initial identification of defendant. The evidence was therefore properly admitted.

### V

The next claim of error asserted by defendant encompasses eight remarks made during the State's closing argument. Initially, we note that defendant has failed to raise four of these remarks in his motion for a new trial, thereby depriving the trial court of an opportunity to consider them and waiving consideration of them by this court on appeal. (*People v. Bryant* (1984), 123 Ill. App. 3d 266, 462 N.E.2d 780.) The allegedly erroneous remarks of which our consideration has not been waived include (1) the State's repeated reference to an eyewitness who assisted police during the investigation but who did not testify at trial; (2) the State's rebuttal to an argument defendant was "precluded from making"; (3) the State's implication that defendant had a bad character and prior criminal record; and (4) the cumulative effect of these errors as depriving defendant of a fair trial. We will review these claims in turn.

The first objected-to remark involves the State's reference to an eyewitness who described defendant and provided the officers with

the license plate number on defendant's car. As set forth earlier, this evidence, otherwise objectionable as hearsay, was properly admissible to detail the course of the police investigation. (*People v. Price* (1979), 79 Ill. App. 3d 1112, 398 N.E.2d 1158.) As such, the State's comment on this evidence during closing argument was proper. *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.

██ The next prosecutorial remark asserted as error is that portion of the State's rebuttal argument made in response to matters argued by defendant, against which the State had vigorously protested, and on which defendant was precluded from making further comment. Our review of the record reveals that defendant's characterization of what transpired at trial is somewhat less than accurate.

The matters continually argued by defendant and objected to by the State were those matters already ruled on by the court in defendant's pretrial motion. Despite the court's denial of defendant's motion, he repeatedly attempted to raise the issues he had raised therein, improperly inferring that the State was withholding evidence which the trial court had already ruled need not be disclosed.

The State appropriately objected to defendant's argument, and the trial court instructed defendant to refrain from arguing matters on which it had already ruled. The State, in rebuttal, commented only on that evidence which had been properly admitted and in responsive reply to the improper comments made by defendant. (*People v. Sutton* (1977), 45 Ill. App. 3d 739, 359 N.E.2d 1132.) Under these circumstances, the State's argument was a proper comment on the evidence and invited and, as such, did not constitute error.

██ The next remark made by the prosecutor to which defendant objects is the State's comment on Officer Kelly's testimony that he "had to go somewhere where they had a picture" of defendant. Kelly's comment was made in explanation of why defendant's picture appeared somewhat different from the other pictures presented to the victim for identification. Defendant, however, asserts that the prosecutor's comment on Kelly's testimony prejudiced defendant by calling attention to "unrelated arrests or other encounters of defendant with the criminal law."

During trial, the State fully complied with the trial court's order not to disclose the origin of the subject photograph. No reference was made to defendant's prior arrests, convictions, or police department files. Viewing the objected-to remark in light of this compliance, we find that the reference made by Kelly upon which the prosecutor commented was far too vague to be suggestive of unrelated criminal activity by defendant. We therefore find that defendant was not preju-

diced by this remark.

Having found none of the remarks claimed as error by defendant to be in fact erroneous, we need not address defendant's argument as to their cumulative impact on his right to a fair trial.

## VI

■■ As his last claim of error on appeal, defendant contends that he was denied a fair trial by the systematic exclusion of blacks from the jury by the State's use of peremptory challenges. The State maintains that the jury was properly selected and that defendant has failed to provide any basis on which to establish the threshold requirement of a pattern of systematic exclusion. We must agree.

Defendant asks this court to disregard the binding precedent in Illinois which holds that excluding blacks by the use of peremptory challenges is not a violation of equal protection (*People v. Davis* (1983), 95 Ill. 2d 1, 447 N.E.2d 353), and that reversal is not required under the sixth amendment when peremptory challenges are used to exclude black jurors in an individual case. (*People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202.) Defendant urges this despite his acknowledgment of the "case by case" standard employed by our supreme court. *People v. Williams* (1983), 97 Ill. 2d 252, 454 N.E.2d 220.

While we could in fact follow Illinois precedent and find that defendant's right to a fair trial had been violated, in order to do so, defendant must make *some* showing of systematic exclusion.

Rather than offer any tangible evidence to support his assertion, defendant in the instant case asks us to find systematic exclusion of black jurors based on his allusion to the "sheer volume of cases raising this issue" in Cook County. We cannot, based on a mere allusion, find evidence of systematic exclusion on a case after case basis, or, for that matter, in this individual case.

For all the reasons set forth above, we affirm the decision of the trial court.

Affirmed.

JIGANTI, P.J., concurs.

JUSTICE JOHNSON, specially concurring:

I take this opportunity to state my views on the issue of prosecutorial misuse of peremptory challenges during the *voir dire* in a crimi-

nal trial to exclude persons from the jury solely on account of their race.

## I. SWAIN V. ALABAMA

In *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, the United States Supreme Court held that a prosecutor's use of peremptory challenges to exclude black persons from a jury in a criminal trial solely on account of their race did not deny the defendant equal protection of the laws as guaranteed by the fourteenth amendment to the United States Constitution. The court held, however, that a defendant would prevail on such a claim if he could demonstrate that a prosecutor in a county was systematically excluding persons from juries for racially motivated reasons "in case after case." (380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837.) The Illinois Supreme Court has repeatedly declared the principles articulated in *Swain* to be controlling in Illinois. *People v. Payne* (1983), 99 Ill. 2d 135, 138, 457 N.E.2d 1202, 1204; *People v. Williams* (1983), 97 Ill. 2d 252, 273-80, 454 N.E.2d 220, 229-33.

Although *Swain* is the law in Illinois, I continue to believe that the better rule is found in the California case of *People v. Wheeler* (1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890. (*People v. Lavinder* (1981), 102 Ill. App. 3d 662, 671, 430 N.E.2d 243, 248 (Johnson, J., dissenting)). There, the California Supreme Court held that the prosecutor's use of peremptory challenges to exclude blacks from juries violated a defendant's right to an impartial jury drawn from a fair cross-section of the community, guaranteed by the California Constitution. (See *Commonwealth v. Soares* (1979), 377 Mass. 461, 387 N.E.2d 499; *State v. Crespin* (1980), 94 N.M. 486, 612 P.2d 716.) The third division of this court concurred with the *Wheeler*-type standard in *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046, *rev'd* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202, relying on the impartial-jury guarantee of the sixth amendment to the United States Constitution. The third division held that when it reasonably appeared to a trial court that the State was using its peremptory challenges solely to exclude black jurors because of their race, the burden shifted to the State of demonstrating that the exclusions were for reasons other than race. (*People v. Payne* (1982), 106 Ill. App. 3d 1034, 1040, 436 N.E.2d 1046.) Relying on its previous decisions, the Illinois Supreme Court rejected this approach and reaffirmed its allegiance to *Swain*. See *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202.

## II. CRITICISM OF SWAIN

Both the legal profession and the general public have criticized *Swain v. Alabama* because (1) it defeats the sixth amendment goal of a fair jury and (2) it contains a standard that is unfair to defendants and is almost unattainable. Dissenting from a denial of *certiorari* in a group of cases raising the issue, Justice Thurgood Marshall of the United States Supreme Court stated the following:

"The right to a jury drawn from a fair cross section of the community is rendered meaningless if the State is permitted to utilize several peremptory challenges to exclude all Negroes from the jury. *** The desired interaction of a cross section of the community does not take place within the venire; it is only effectuated by the jury that is selected and sworn to try the issues. The systematic exclusion of prospective jurors because of their race is therefore unconstitutional at any stage of the jury selection process." *McCray v. New York* (1983), 461 U.S. 961, 967-68, 77 L. Ed. 2d 1322, 1325, 103 S. Ct. 2438, 2442 (Marshall, J., joined by Brennan, J., dissenting).

Many legal commentators have written scholarly critiques of *Swain v. Alabama.* (*McCray v. New York* (1983), 461 U.S. 961, 964-65 n.1, 77 L. Ed. 2d 1322, 1324 n.1, 103 S. Ct. 2348, 2440 n.1.) This pernicious practice is so widespread throughout Illinois and the nation that concerned citizens discuss it publicly. (See *People v. Frazier* (1984), 127 Ill. App. 3d 151, 160 app. 2, 469 N.E.2d 594, 601 app. 2; Waltz, *Now It's Harder for Lawyers to Pick Biased Jury*, Chicago Sun-Times, July 13, 1982, at 30, col. 1.) Five justices of the United States Supreme Court have indicated that such use of a prosecutor's peremptory challenges is sufficiently serious to merit the court's review at a later date. (See *McCray v. New York* (1983), 461 U.S. 961, 77 L. Ed. 2d 1322, 103 S. Ct. 2438 (opinion of Stevens, J., joined by Blackmun and Powell, JJ.; dissenting opinion of Marshall, J., joined by Brennan, J.) Additionally, the United States Court of Appeals for the Second Circuit has become the first Federal appeals court to apply the sixth amendment impartial jury guarantee to the prosecutorial misuse of peremptory challenges for racially motivated reasons. The court recently held that a defendant need demonstrate prosecutorial misuse at his trial only and not in case after case. *McCray v. Abrams* (2d Cir. 1984), 750 F.2d 1113.

*Swain v. Alabama* is criticized intensely because its "case after case" standard is unfair and, arguably, impossible to meet. Justice Marshall noted the unfairness of *Swain* when he stated the following:

"Since *every* defendant is entitled to equal protection of the laws and should therefore be free from the invidious discrimination of state officials, it is difficult to understand why several must suffer discrimination because of the prosecutor's use of peremptory challenges before any defendant can object." (Emphasis in original.) *McCray v. New York* (1983), 461 U.S. 961, 964-65, 77 L. Ed. 2d 1322, 1324, 103 S. Ct. 2438, 2440 (Marshall, J., dissenting).

Dissenting from the Illinois Supreme Court's reversal of the appellate court's decision in *Payne*, Justice Seymour Simon noted the unachievable nature of the *Swain* standard when he stated the following:

"The *Swain* requirement of systematic exclusion of black jurors in case after case, however, presents a nearly insurmountable hurdle for an individual defendant, and I have found only two cases decided since *Swain* where defendants actually established this systematic exclusion. [Citations.]

It is obvious why defendants have established so little misuse of peremptory challenges under the *Swain* standard. The prosecutors are the only people who know why peremptory challenges are used against black persons, and they are not telling anyone. It seems to me that if this court imposes the *Swain* requirements on defendants, the only way defendants could get solid evidence on the misuse of peremptory challenges in case after case would be to subpoena assistant State's Attorneys and even State's Attorneys to testify at a hearing during *voir dire* or in a civil class action suit by prospective black jurors or black defendants. Certainly this would provide a spectacle that should be avoided if any alternative is available, and I submit one which this court is inviting by this decision and by its prior decisions in *Davis* and *Williams*." *People v. Payne* (1983), 99 Ill. 2d 135, 147-48, 457 N.E.2d 1202, 1208 (Simon, J., dissenting).

Despite the apparent impossibility of meeting the case after case standard, I believe that it has been met in this case. The number of Illinois defendants who claim prosecutorial misuse of peremptory challenges is large and ever-increasing. (*People v. Frazier* (1984), 127 Ill. App. 3d 151, 156-57, 469 N.E.2d 594, 598-99 (listing 46 cases).) Acknowledging that our supreme court rejected this interpretation of *Swain* in *Payne*, I believe that the sheer number of cases that raise the issue demonstrates that prosecutors in Illinois have been purposely and systematically using peremptory challenges

to exclude blacks from juries in case after case. *People v. Payne* (1983), 99 Ill. 2d 135, 152-54 (Simon, J., dissenting).

### III. THE APPEARANCE OF JUSTICE

Now that I have discussed *Swain* and its Illinois offspring, I turn to the effect of those decisions on our society. This decision and the many others denying defendants' sixth amendment claims, relying on *Swain* and its Illinois offspring, destroys the appearance of justice in our courtrooms. A criminal trial is a public event whose significance reaches beyond the truth or falsity of the accusation. A trial includes the ceremonial trappings of history, the appearance of justice, and the participation of citizens in passing judgment. Our entire society, therefore, is represented at a criminal trial. See *Richmond Newspapers, Inc. v. Virginia* (1980), 448 U.S. 555, 65 L. Ed. 2d 973, 100 S. Ct. 2814.

The State, through the prosecutor, practices racial discrimination when it uses peremptory challenges to exclude blacks from juries. In light of the public nature of criminal trials, "we must be ever solicitous that those in attendance witness a system of justice in its truest sense and not a system of *de facto* racial discrimination." *(People v. Payne* (1982), 106 Ill. App. 3d 1034, 1038, 436 N.E.2d 1046, 1049 *rev'd* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202.) Indeed, the practice causes injury to "the jury system, to the law as an institution, to the community at large, and to the democratic ideal reflected in the processes of our courts." *Ballard v. United States* (1946), 329 U.S. 187, 195, 91 L. Ed. 181, 187, 67 S. Ct. 261, 265.

Actions speak louder than words. The fundamental proposition that racial discrimination practiced in Illinois courts is repugnant to the law of Illinois and should be condemned cannot be overstated (see *People v. Payne* (1983), 99 Ill. 2d 135, 139) (Clark, J., specially concurring). These statements, however well-intentioned, do not remove the appearance of injustice when courts appear to condone racial discrimination through the prosecutor's use of peremptory challenges. As Chief Justice Robert N.C. Nix of the Pennsylvania Supreme Court asked in his dissenting opinion in *Commonwealth v. Martin* (1975), 461 Pa. 289, 299, 336 A.2d 290, 295, "Is justice to sit supinely by and be flaunted in case after case before a remedy is available? Is justice only obtainable after repeated injustices are demonstrated? Is there any justification within the traditions of the Anglo-Saxon legal philosophy that permits the use of a presumption to hide the existence of an obvious fact?" The judiciary must stop this discrimination in its courts to avoid *appearing* to be an accomplice to it.

## IV. CONCLUSION

In light of the following analysis, I completely agree with the measures that the third division of this court noted in *People v. Frazier* (1984), 127 Ill. App. 3d 151, 158 app. 1, 469 N.E.2d 594, 599 app. 1. The assistant State's Attorney who prosecuted the present case at trial was Mary Ann Callum. Her name is reprinted so that interested persons may study the actions of the office of the State's Attorney of Cook County according to the case after case standard of *Swain*. "Of course, [I] pass no judgment and make no inference regarding [her] conduct or motive in the present case or in any other case." *People v. Frazier* (1984), 127 Ill. App. 3d 151, 155; *People v. Goodum* (1984), 127 Ill. App. 3d 350, 356, 468 N.E.2d 1237, 1241.

Insofar as the majority correctly applied the present law of Illinois to the facts of this case, I concur in the result.